THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DIANE BARNETT, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 07-CV-2356 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTATION. § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 14) and Plaintiff's Cross Motion for Summary Judgment (Document No. 15). Having considered the Cross Motions, (Document Nos. 14, 15), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 16), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

**I.      Introduction**

Plaintiff Diane Barnett ("Barnett") brings this action pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. 405(g) and 1383(c)(3), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Barnett argues that

substantial evidence does not support the Administrative Law Judge's ("ALJ") decision and that the ALJ erred by: (1) failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. 404.1529; (2) making a conclusory credibility finding in violation of SSR 96-7p; (3) and failing to adequately evaluate the claimant under the Medical-Vocational Guidelines. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the Commissioner's decision, that the decision comports with the relevant law, and that it should therefore be affirmed.

## II.    Administrative Proceedings

On May 24, 2004, Barnett applied for disability insurance benefits, claiming that she has been unable to work since May 15, 2004, as a result of diabetes, an enlarged heart, and high blood pressure. (Tr. 57, 65). The Social Security Administration denied her application at the initial and reconsideration stages. After that, Barnett requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Rafael Lugo-Vilanova, held a hearing on July 26, 2006. (Tr. 51). On August 18, 2006, the ALJ issued his decision finding Barnett not disabled. (Tr. 13-23).

Barnett sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue, which may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Barnett's contentions in light of the applicable regulations and evidence, the Appeals Council, on May 11, 2007, denied Barnett's request for review. (Tr. 6-9).

The ALJ's findings and decision thus became final.

Barnett filed a timely appeal for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). Both the Commissioner and Barnett have filed Motions for Summary Judgment (Document Nos. 14-16). This appeal is now ripe for ruling.

The evidence is set forth in the record, pages 1-491. There is no dispute as to the facts contained therein.

### III.   Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the

evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age,

    education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

    The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ found at step four that Barnett could perform her past relevant work as a child day care center teacher's aid, and that Barnett was therefore not disabled. (Tr. 22). In particular, the ALJ determined that Barnett was not presently working (step one); that Barnett's diabetes mellitus, hypertensive cardiovascular disease with mild cardiomegaly, and dilated cardiomyopathy were severe impairments since they impose more than a minimal or slight limitation on the claimant's ability to perform basic work-related activities (step two); that the impairment or combination of impairments did not meet or equal an impairment listed in Appendix 1 of the Regulations (step three); but that Barnett is capable of performing her past relevant work as a child day care center teacher's aid (step four). (Tr. 17-23). In this appeal, the Court must determine whether substantial evidence supports that step four finding and whether the ALJ used the correct legal standards in arriving at that conclusion.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren*, 925 F.2d at 126.

V.  Discussion

   A. Objective Medical Facts

The objective medical evidence, which dates in the record from May 2004, shows that Barnett

suffers from diabetes mellitus, hypertensive cardiovascular disease with mild cardiomegaly, and dilated cardiomyopathy.

### 1.     Diabetes Mellitus

In 2000, Barnett was diagnosed with diabetes mellitus. (Tr. 170). Her fasting blood sugar usually ranges from 180 to 190 each morning but she experiences spells of dizziness and blurred vision when her blood sugar is high. (Tr. 170). However, it appears that her diabetes is controlled by Metformin, which she has been taking since before May of 2004, although the exact date is not in the records. (Tr. 114). Barnett has complained of vision problems due to her diabetes. Her Snellen visual test shows corrected vision of 20/25 in each eye; however she has not had an eye appointment since 2003, and at that time "no definite diabetic changes in the retina were reported." (Tr. 170). The medical records relating to Barnett's diabetes mellitus make very few references to diabetes and do not clearly establish the severity of the condition.

### 2.     Hypertensive Cardiovascular Disease with Mild Cardiomegaly

Barnett's medical records show that she has had fluctuating blood pressure since at least February of 2003. (Tr. 368). Between 2003 and 2005 her blood pressure has ranged from a high of 167/97 to a low of 82/53. (Tr. 114, 384). Barnett was prescribed Enalpril at least as early as May 2004. (Tr. 183). When seen at Memorial Hermann Southeast Hospital with a blood pressure of 167/97, she was instructed to continue the Enalpril for treatment of her hypertension by her treating physician, Dr. Subhadra Bandhakavi (Tr. 113). Since May of 2004, Barnett's blood pressure has continued to fluctuate. (Tr. 182 (140/74); Tr. 181 (94/72); Tr. 167 (147/90); Tr. 143 (130/70); Tr. 180 (114/80); Tr.171 (112/88); Tr. 179 (120/78); Tr. 178 (108/73); Tr. 381 (128/78); Tr. 224 (123/68), Tr. 233 (135/76); Tr. 382 (110/70); Tr. 383 (122/36); Tr. 384 (82/53); Tr. 385 (118/81)).

In March of 2005, when Barnett's blood pressure was at a low of only 82/53, the treating doctor changed the dosage of Enalpril that Barnett was receiving. The only available medical evidence since that date is a blood pressure reading of 118/81 on July 13, 2005. (Tr. 385). These records, combined with a report from an examination by a Dr. William Livesay where he stated her blood pressure "control has been much better since [Barnett] lost 50 pounds since she was in the hospital in May" (Tr. 170) suggest that Barnett's blood pressure is controlled, however, there are no records that show any blood pressure reading since the one taken on July 13, 2005.

There are very few medical records that discuss Barnett's mild cardiomegaly. A chest x-ray done May 23, 2004, found her heart size to be at an upper normal level. (Tr. 115). Dr. Livesay, in his examination on June 24, 2004 stated that Barnett's chest x-ray showed a slight prominence of the left ventricle and the C/T ratio is 13.5/25.5 cm. Dr. Livesay stated this indicated mild cardiac enlargement but there was no evidence of congestive heart failure. (Tr. 172). A subsequent radiology report from Memorial Hermann on May 19, 2005, stated that a study of the chest revealed the size of Barnett's heart to be at the upper limits of normal. (Tr. 267). Overall, the medical records discussing Barnett's mild cardiomegaly are scarce and do not establish how severe or limiting her condition is.

### 3. Dilated Cardiomyopathy

Barnett's cardiomyopathy is the condition addressed in a majority of the medical records. Barnett first went to the hospital on May 24, 2004, with complaints of chest pain, difficulty breathing, and arm and neck pain. She was seen by Dr. Subhadra Bandhakavi who ordered an echocardiogram and cardiac catheterization where an ejection fraction of 35% and 40% were found respectively, with multiple premature ventricular contractions. Barnett, however, had normal coronary arteries. (Tr.

113, 167). Barnett was discharged on May 25, 2004, with a prescription for Coreg and Vasotec and instructions to continue Enalpril. (Tr. 113).

Barnett returned to Memorial Hermann on June 13, 2004, complaining of tiredness, shortness of breath with short distances, and near syncope and collapse. (Tr. 166-167). Dr. Subhadra Bandhakavi once again examined her and determined the syncope was most likely postural or vasovagal versus medication induced. On September 1, 2004, Barnett was seen by Dr. Julia Adrogue at Ben Taub with complaints of shortness of breath and tiredness. At that time, Barnett's ejection fraction was still 35% and Barnett was found to have global hypokinesis and a dilated left ventricle. (Tr. 225). Her physician increased the dosage of Coreg and recommended a follow-up in six weeks.

Before the follow-up date, however, Barnett returned to Memorial Hermann Southwest Hospital with complaints of severe neck pain. She was treated for the pain but also had a cardiac consultation with Dr. Rameshbhai Patel. Dr. Patel stated that the clinical impression was that Barnett had congestive heart failure and that she should maintain an "anti-heart failure regimen." (Tr. 213). However, an echo report from September 21, 2004, showed a marginally improved ejection fraction of between 35-40%. (Tr. 381).

Barnett's cardiomyopathy has appeared to continue to improve, which is shown in an echo report from February 23, 2005 showing an ejection fraction of 45-49%. (Tr. 343). On February 23, 2005 Barnett also had a CardioPulmonary Exercise Test performed. (Tr. 363). It was terminated due to "leg fatigue, shortness of breath, and PVC's during exercise that decreased during exercise." (Tr. 363). Barnett experienced pleuritic retrosternal chest pain after the test was terminated. (Tr. 363). Her maximal oxygen consumption was severely reduced at 9.7 ml/kg/min, however, it appears that the ventilatory responses to the exercise were normal and there was no evidence of blood pressure

changes. (Tr. 363, 21). In addition, on July 6, 2005, it was found that Barnett could walk one mile without experiencing shortness of breath or palpitations, had an ejection fraction of 45-49%, and was considered stable by her treating physician Dr. Julia Adrogue. (Tr. 318).

Upon this record, the objective medical evidence supports the ALJ's conclusion that Barnett is not disabled. Although the ALJ did find that Barnett's impairments of diabetes mellitus, hypertensive cardiovascular disease with mild cardiomegaly, and dilated cardiomyopathy were severe, the objective medical evidence does not show that any of these conditions are sufficiently severe or pervasive to preclude Barnett from all type of gainful activity. Therefore, the objective medical evidence factor supports the ALJ's decision.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 1997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

In this case, there is only one medical opinion in the record by Dr. William Livesay who conducted a consultative examination of Barnett on June 24, 2004. (Tr. 169-176). There are no

medical opinions in the record from any of Barnett's treating physicians regarding Barnett's physical limitations. Dr. Livesay, in his examination, gave no opinion as to whether or not Barnett's impairments were disabling. He did determine that Barnett has "diabetes mellitus with possible early diabetic neuropathy, hypertensive cardiovascular disease with mild cardiomegaly, dilated cardiomyopathy with abnormal ECG and mild left ventricular enlargement by x-ray, and visual problems related to diabetes mellitus." (Tr. 172). Dr. Livesay also found no evidence of congestive heart failure radiographically and suggested an eye exam should be done to gauge any possible evidence of diabetic retinopathy. (Tr. 172). He also found Barnett had pain in her left knee with movement along with muscle weakness both in grip strength and upper and lower extremity muscle testing, which he related to her generalized fatigability. (Tr. 171-172).

A RFC assessment was completed by Dr. K.C. Goodman on August 25, 2004, from his review of Barnett's medical records. (Tr. 196-203). Dr. Goodman concluded that Barnett could lift up to 20 pounds occasionally, 10 pounds frequently, sit and/or stand six hours out of an eight hour work day, had unlimited ability to push and/or pull, and no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 197-198). Dr. Goodman further noted, however, that Barnett was unable to squat because of weakness. (Tr. 198). Dr. Goodman's final assessment was that Barnett's "alleged limitations are partially credible." (Tr. 201).

The ALJ based his determination on this opinion evidence of Dr. Livesay and the RFC assessment by Dr. K.C. Goodman along with the objective medical evidence as a whole.

> When examined by Dr. Livesay on June 24, 2004, the claimant was documented to have a blood pressure reading of 112/88. Her weight was recorded at 173 pounds, which was significantly reduced from her weight in May 2004, of 220 pounds. At the hearing, the claimant testified that she currently weights [*sic*] 130 pounds. Based on Snellen test, the claimant was documented to have a corrected vision of 20/25 in each

> eye. Lungs were clear to percussion and auscultation. Heart sounds and rhythm were normal. Pulses were full and equal in all extremities. All joints had full range of motion. Dr. Livesay observed the claimant to have a normal gait. Also, the claimant was able to walk on her toes and heels. Straight leg raising was negative in the supine and seated positions. Radiological findings of the chest were positive for only mild cardiac enlargement without evidence of congestive heart failure (Exhibit 3F).

(Tr. 21).

> As for the opinion evidence, it was the opinion of the State Agency reviewing physicians, K.C. Goodman, M.D., and Terry Collier, M.D., on August 25, 2004, and December 1, 2004, respectively, that the claimant could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours out of an 8-hour workday, and sit about 6 hours out of an 8-hour workday. It was further opined that there were no postural, manipulative, visual, communicative, or environmental limitations (Exhibit 5F). The residual functional capacity conclusion reached by the State Agency reviewing physicians also support a finding of "not disabled." It is well settled that a non-examining medical expert's opinion and assessment of residual functional capacity is not only admissible in evidence (20 CFR § 416.927(f)) but may constitute substantial evidence of non-disability when not in conflict with the clinical findings of other examining or treating doctors. Richardson v. Perales, 402 US 389, 402 (1971); Califano v. Boles, 443 US 282, 285, note 4 (1979); Villa v. Sullivan, 895 F.2d 1019 (5th Cir. 1990); Carrier v. Sullivan, 944 F.2d 243, 246 (5th Cir. 1991); Oldman v. Schweiker, 660 F.2d 1078 (5th Cir. 1981). There is no medical assessment in evidence other than the assessment of the State Agency reviewing physician.
>
> There is no documentation that any of the claimant's treating or examining sources have ever indicated that the claimant is disabled or has limitations greater than those determined in this decision. It is significant that no physician has indicated that the claimant is unable to work. Harper v. Sullivan, 887 F.2d 921, 927 (5th Cir. 1989); Vaughn v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995). The Administrative Law Judge is charged with the duty and responsibility of resolving conflicts in the medical evidence and medical opinions, weighing the evidence and to determine the case accordingly. Chaparro v. Bowen, 815 F.2d 1008, 1010-1011 (5th Cir. 1987); Barrajas v. Heckler, 738 F.2d 641, 645 (5th Cir. 1984). It has long been held that acceptance of one expert's opinion over another may this [*sic*] constitute substantial evidence. Klapatch v. Finch, 297 F. Supp 976 (N.D. Pa, 1969): and cited cases above.

(Tr. 22). Given the thoroughness of the ALJ's discussion of the objective medical evidence, and the ALJ's reliance on the opinions of Dr. Livesay and Dr. Goodman, whose opinions were found to be credible and consistent with the medical evidence as a whole, the diagnosis and expert medical

12

opinion factor also supports the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the Social Security Act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Barnett testified at the administrative hearing that she suffers from an enlarged heart, congestive heart failure, and diabetes. (Tr. 475, 480). She testified that what is keeping her from working is her tiredness. According to Barnett, she gets tired even when walking only half a block, standing up, putting on clothes, taking a bath, or standing for more than 10 or 20 minutes. (Tr. 475-

476). She also stated she has pain in her neck and back along with difficulty sleeping from her heart condition and that medication does not resolve the heart problems. (Tr. 476-477). In addition, Barnett testified about her generalized weakness and difficulty breathing that was mentioned in the record. (Tr. 479). With respect to household and usual activities, Barnett stated because of her difficulty breathing and weakness, she cannot go to the grocery store, pick up or babysit her grandkids, and her daughter must prepare all her meals, drive her around, and run errands. (Tr. 473, 480). In addition, Barnett stated that during a typical day she must lay down up to three hours a day because her muscles are weak and she gets very tired. (Tr. 473). She has also lost 100 pounds in one year, weighing 230 pounds originally and now weighing only 130 pounds. (Tr. 471).

Barnett also testified that she has been diabetic for twelve years, that both her mother and father had diabetes, and that her mother and brother both had congestive heart failure. (Tr. 480-481). She also stated that her diabetes has affected her eyesight, making her dizzy and unable to easily read or write. (Tr. 480-481). Barnett also has problems with pain in her left leg from poor blood flow, which causes her legs and feet to swell and become painful. (Tr. 481-482).

The claimant's daughter Niquisha Prather also testified at the hearing. She stated that these impairments, particularly Barnett's congestive heart failure, have been a significant impairment in not only her job, but also her normal life. (Tr. 486). Ms. Prather also testified that she must come over to wash Barnett's hair because the lifting of her arms causes tremendous pain. (Tr. 486).

The ALJ found that Barnett's complaints and subjective symptoms were not entirely credible. In so doing, the ALJ wrote:

> The claimant alleges an inability to work due to congestive heart failure, an enlarged heart, diabetes and hypertension. Secondary to her medical condition, the claimant testified that she experiences fatigue and shortness of breath. It was her testimony

14

that she has to lie down 3 hours per day. The claimant stated that she also experiences weakness in her legs and arms. In addition, the claimant testified that she experiences pain in her back and neck. However, the medical record fails to support the claimant's allegations of disabling pain. Factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of us[e], significant neurological deficits, weight loss, or impairment of general nutrition, and non-alleviation of symptoms by medications. Hollis v. Bowen, 837 F.2d 1378, 1384 (5th Cir. 1988); Adams v. Bowen, F.2d 509, 512 (5th Cir. 1987); Hames v. Heckler, 707 F.2d 162, 166 (5th Cir. 1983). None of the claimant's examinations disclosed the above findings to any significant degree.

The claimant testified further that she experiences problems with her vision due to diabetes. It was her testimony that she has difficulty reading. However, the claimant stated that she was recently prescribed new glasses in January.

As to daily activities, the claimant stated that she is unable to perform any household chores. She stated her daughter does the chores, including cooking and grocery shopping. Despite the fact that the claimant has described daily activities which are fairly limited, two factors weight [*sic*] against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. In fact, the Administrative Law Judge is directed to progress notes dated July 6, 2005, which documents the claimant was able to walk 1 mile (Exhibit 10F, page 2). Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

Ms. Niquisha Prather, the claimant's daughter, provided testimony on behalf of the claimant. Ms. Prather testified that when she went shopping with the claimant and [*sic*] she was unable to make it to the door without experiencing problems. Consequently, she stated she had to get her mother a wheelchair. In addition, she testified that she has to wash her mother's hair because her mother is unable to lift her arms due to pain.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 19-20). Credibility determinations, such as that made by the ALJ in this case, are generally

15

within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D.     Education, Work History and Age

The fourth element considered is the claimant's educational background, work history, and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record shows that Barnett was fifty years old on the date of the hearing before the ALJ, had a high school education, three years in college studying elementary education, and had past work experience as a teacher's aide. (Tr. 466-468). The ALJ concluded, after considering the entire record, that Barnett had the residual functional capacity to perform a light level of work activity. (Tr. 19). The ALJ questioned vocational expert Wallace A. Stanfill, who testified at the hearing on July 25, 2006, about Barnett's ability to perform her past relevant work. Stanfill stated that Barnett's work level was SVP 4, semi-skilled, and light. (Tr. 489). He also stated that even though the job was at a light work level, it is the type of job that requires a lot of energy and that the skills could not be

transferred to sedentary. Stanfill testified that Barnett at one time told him the job was at the light level and at one point told him it was performed at the medium level. (Tr. 489). The ALJ concluded from this testimony that "if she can do light, she can work. If she can do sedentary, then she will grid out." (Tr. 491). The ALJ considered Stanfill's testimony in his decision:

> Wallace Stanfill, the vocational expert, classified the exertional and skill levels of the claimant's past relevant work as light and semi-skilled according to the Dictionary of Occupational Titles. However, the record indicates that the claimant has provided inconsistent information in describing how she performed her job duties. On the disability report completed on June 23, 2004, the claimant indicated that she was required to walk and/or stand up to 6 hours per day and sit 2 hours per day but had to lift up to 50 pounds (Exhibit 1F, page 3). On the work history report completed on July 15, 2004, it was annotated that the claimant had to lift only up to 20 pounds (Exhibit 3E, page 2).
>
> In any event, a claimant who has the residual functional capacity to perform the functional demands and duties of a particular past relevant job, or the functional demands and duties of the occupation as generally required by employers throughout the national economy, is not disabled under the provisions of the Social Security Act. Leggett v. Chater, 67 F.39 558 (5th Cir. 1995). [*sic*]
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed in the national economy.

(Tr. 22-23). Because there is substantial evidence in the record to support the ALJ's conclusion that Barnett can perform light work, this final factor also supports the ALJ's decision.

Barnett also claims that the ALJ failed to adequately evaluate the claimant under the Medical-Vocational Guidelines. Use of the "grid rules" however, is "only appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimants' nonexertional impairments do not significantly affect his residual functioning capacity" *Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002) (quoting *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999)). An exertional impairment is present when the limitations and restrictions imposed by the impairments,

17

such as pain, "affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)" 20 C.F.R. § 404.1569(b). Barnett has stated in her testimony that lifting anything over five pounds causes her pain. (Tr. 477). In addition, nonexertional limitations are present when the restrictions imposed by the impairments, such as pain, "affect only the ability to meet the demands of jobs other than the strength demands," such as difficulty seeing, tolerating dust or fumes, or difficulty performing the postural functions of some work. 20 C.F.R. § 404.1569(c). Barnett testified that any type of perfume or something that has a lot of smell "takes her breath away" and bothers her enough that she cannot go out in public, she cannot squat because of weakness in her legs, and has difficulty reading and difficulty "seeing little bitty writing." (Tr. 172, 479, 481). These factors were considered by the ALJ at the hearing on July 25, 2006.

From Barnett's testimony, it appears that Barnett's limitations and restrictions imposed by her impairments have affected both the strength demands and the demands of jobs other than the strength demands. In such a situation it is considered that the claimant will have a combination of exertional and nonexertional limitations or restrictions. 20 C.F.R. § 404.1569(d). As such, the ALJ did not err in not relying on the medical-vocational guidelines for a disability decision in this case.

Moreover, the Medical-Vocational Guidelines may be used during the fifth step in the process to "determine whether a claimant is capable of performing other work or is disabled" *Watson*, 288 F.3d at 216. In this case, the ALJ decided Barnett's case at step four of the process by finding she was able to perform her past relevant work as a child day care center teacher's aid. (Tr. 22). Therefore, the ALJ did not need to consider the Medical-Vocational Guidelines in making his decision that the claimant is not disabled.

## V.      Conclusion and Order

Considering the record as a whole, the Magistrate Judge is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schwiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, the ALJ's decision was supported by substantial evidence and comports with applicable law. Therefore, the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 14) is GRANTED, Plaintiff's Brief in Support of Motion for Summary Judgment (Document No. 15) is DENIED, and that the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 26th day of June, 2008.

Frances H. Stacy
United States Magistrate Judge